The party should know that we're familiar with your cases. We've read your briefs, the authorities cited in your briefs. We've looked at the record. You have limited time, so feel free to get to the heart of your argument. Anything raised in your brief will still be before us, even if we don't talk about it this morning. Pay attention to the green, yellow, and red light. If the red light shines, it's time to wrap it up. If you're answering a question from the court, you can finish your answer, but please do respect the court's time. We'll start with King v. United States. Mr. King. Good morning, Your Honors. Good morning. First of all, I want to thank you for giving me this opportunity as a pro se individual to present this case. This case has gone on for over nine years, and as a whistleblower against several defendants in the original case that the government used. I was the initial source of the information. I filed the initial complaint in court, cooperated throughout the entire investigation. And the basis of this argument, and please forgive me, I've never done this before. No, that's okay. As I think you know, the issue before us is whether there's been a waiver of sovereign immunity. So after your original suit was dismissed, and then there was a settlement, as I understand it, and you then filed suit against the United States to recover a portion of the settlement, right? Yes, sir. And so the question is, does the act, does the False Claims Act, waive the sovereign immunity of the United States from that kind of complaint that you filed, which is really, in legal terms, we would sometimes refer to that second complaint you filed as kind of a collateral attack on the judgment from the first case, because you won a portion of the settlement from that case, right? Yes, sir. And, you know, the Supreme Court has told us that in our system, the notion of sovereign immunity was something that existed in Anglo law before it became Anglo-American law. And even after the founding of the Republic, we still have, the United States still enjoys sovereign immunity unless Congress clearly in a statute waives that immunity. And so that's really, from my perspective, the question before us. Do you agree that's the question before us? Yes, sir, but I'm not an attorney, but I've spent thousands of hours in the law library over the last nine years and wrote a significant amount of my complaints and petitions and so forth and found out later that a lot of those were modified, making them lack the information that would be effective by the attorneys. The issue that I have here is, to use a phrase of our Commander-in-Chief, is a corrupt and rigged system. So the thing we have to figure out is did Congress waive the sovereign immunity of the United States from the kind of complaint that you filed the second time? And so it's not clear to me where there's been such a waiver. But from my understanding, and I don't, again, know that it may be true, that the only defense against sovereign immunity or a defense is whether or not torturous interference occurred by the government to prevent my case from succeeding. And even though I brought up language, I wrote the original complaint against the government, which clearly had language that I stated in that complaint that the government either allowed, supported, initiated personal attacks against me, and I also stated cases in the complaint where, from a leading author and attorney, James Helmer, that such attacks have occurred by the government to prevent or conceal or limit the recovery by the relator. I also submitted documents in the DOJ statistics in the Briggs & Dunn, I believe, exhibit where from 2008 to 2012, which my case was alive, a majority of the cases were originated by a whistleblower, but only 1% were paid out, 1%. So really, I mean, I've lived and breathed this case for nine years, unfortunately. It's been a tremendous burden on me and has cost me dearly to make the sacrifice. That's why the reward is pretty high. And I had no knowledge of the false claim, nor did I intend on filing a lawsuit. I was actually encouraged to move forward by the attorneys for the Rock Island Arsenal who were saying to me that it would be a patriotic act for a country and sure to save lives if I would file this lawsuit in behalf of the government and at that time believing that my government would support me in my efforts. Let me ask you this. As Judge Pryor said, we understand that you're seeking a share of the settlement that the government reached with the defendant. Was there any reason why you couldn't have filed your request for your relator's share in the original action? Why did you file a separate lawsuit? It's because my attorneys refused to file such motions when settlements were occurring and they were aware of it. Right, but you made a filing, and you could have made that claim in the original action, couldn't you? Yeah, but I couldn't do it as pro se. I mean, my attorneys refused to make those claims, even though they knew attorneys that represent the relators and the whistleblowers are nothing more than an extension of the government's because the Department of Justice is judge and jury in these matters. They almost never go to trial. They get settled, and the defendants in a whistleblowing lawsuit don't challenge the government because whether they win or lose the lawsuits, the defendants in these cases will simply, as it happened in my case, their contracts will be revoked and they'll be shut down. DSC was shut down. My employer was shut down and put out of business based on an Inspector General's report based solely on my facts. If you look at all my documentation, including the original memo, to executives, it's over five years. My information was transported and transposed. So I could not get my attorneys to simply file motions. They refused when we knew settlements were occurring. Well, why didn't you fire your attorneys and then pursue it pro se? I could not. I wanted to, but you can't represent yourself pro se because the government is a co-plaintiff. And when the government's a co-plaintiff, you can't represent yourself, even though I was doing a vast majority of the work myself. And so I had six attorneys, and the evidence clearly shows that only one simply resigned. The other attorneys, I mean prevalent attorneys, attorneys, you know, one's a federal judge now, and these attorneys refused to file motions to protect my interests. And I couldn't do it myself. So what is the defense against the government's clearly defying the law where the alternate remedy clearly states I'm entitled to a share no matter what action the government takes, whether they intervene or, as General Maddox stated in his interview with ABC News, based on the information Mr. King gave us, we did an inspection, 158 out of 160 40-millimeter grenades were defective, and we filed a warranty against DSE. General Maddox stated this on news. That's an alternate remedy to directly pointing to me as the source of that information. My attorneys knew that. I asked them, pleaded with them, fired one attorney, Craig James, a former congressman, when he clearly sabotaged the only deposition in my case. But one attorney after another continued to pick up where the last one left off was to willingly refuse to protect my rights, not only as a relator but my constitutional rights at due process. This is the only time these facts have ever been presented in court, and this is nine years later because no attorney that practices this law ever challenges the Department of Justice because they, too, will be blackballed and never receive recoveries. They could put complaints in front of the Department of Justice. The Department of Justice can take that information, proceed on in an alternate remedy, and never pay out. That is the crux of this case. And what does a citizen of the United States of America, what defense do you have in this situation where it's clearly a corrupt and rigged system? There is no defense. You can't represent yourself, and you can't find attorneys that will represent you because. . . So the waiver. . . So my argument is, sir, that even though I had language in my first complaint against the government that there was torturous interference by the government, my second attorney, Stephen Kalveka, pulled all that information out. I worked with him, and then when the government responded, claiming sovereign immunity, he refused to defend it. In an hour and a half on the Internet, I had a defense against sovereign immunity that was torturous interference. Okay, Mr. King. We've let you go over a bit. You reserve five minutes for rebuttal. We're going to allow you to keep all of that. Let us hear from the government for a moment. Thank you. Thank you, sir. Mr. McConnell. Good morning, Your Honors, and may it please the Court. Even if there had been a fraud settlement, and even if Mr. King was entitled to a portion of it, which he wasn't because his key TAN action was dismissed with prejudice, a lawsuit against... The settlement was before that, right? It was, correct. Would he have been entitled to... Had he been aware of the settlement to seek a share of the proceeds at that time? Before the dismissal of the suit? At that time, he potentially could have sought a portion of the settlement. My recollection is it was clear in the record of the original key TAN action that something like in July, it was clear that there had been this settlement and it wasn't dismissed until the following February, something like that. Is that correct? That's correct, Your Honor. If you look at paragraph 23 of Mr. King's complaint in this action, he says that the settlement that he's talking about is memorialized in the declaration of Julie Siva, who was an Army contracting officer. And that's attached to his complaint, the Siva Declaration, as Exhibit 2. The Siva Declaration says that she invoked a contractual warranty clause because of nonconforming product, but that didn't pose a safety concern for the warfighter, and that based on the warranty clause, recouped the cost of the government's investigation. Now, if you look at the header of that declaration, it was originally filed in July of 2012, seven months before the dismissal in the original. He alleges, though, in this complaint, this second complaint, that it was a covert settlement of which he was unaware, right? He does allege that, but I think that allegation is implausible when you look at the declaration attached to his complaint. But even if we accept it as true, the real question is, has there been a waiver of sovereign immunity from the filing of this second complaint, right? Right, Your Honor. For example, even if the settlement was fraudulent, he knew about the settlement in time to seek his reimbursement, his share, 15 to 25 percent, before his suit for his original Keytown suit was dismissed. That's right, Your Honor. And so, no, there hasn't been a... And of course, as the presiding judge says, none of that matters anyway because we're just flat bound that there is no waiver of sovereign immunity in a separate suit. That's right, Your Honor. And, you know, even if the DOJ attorneys or personnel in the DOJ had tried to waive it, they can't because it can only be waived by statute. It has to be a congressional statute written in the statute books to waive sovereign immunity. And so even if they pulled a terrible fraud on him, that's not a waiver under the law. Right, Your Honor. We dispute that there was this fraud perpetrated by the government, but it's beside the point because Congress hasn't provided for this sort of right of action in the FCA. It provides for a right of action, the right to file a lawsuit, multiple times in the statute. And when it does, it does clearly. When you look at Section 3730A, it allows the attorney general to file an action against a defendant who submitted a false claim. 3730B allows a private person to file similar action on behalf of the United States government. 3730H allows a person to file a retaliation claim against his or her employer. Yeah, and there are other remedies available when there has been some kind of fraud on a court, right? Rule 60B motion, that sort of thing, right? Right, and that's been the practice. If you look at the cases from sister circuits that we cite, the relator either seeks a share of an alternate remedy in the key TAM action while it's ongoing, or in some cases tries to reopen under Rule 60B and seek it in the original action. And that's consistent with practice. It's consistent with the text of the statute. It's consistent with the legislative history under the FCA. So that's the way you do it. And so that alone is reason enough for this court to affirm the dismissal. A separate basis, related but independent, is that his suit was dismissed. And so if you look at the cases we cite where the relator's suit was dismissed under summary judgment, Rule 9B, under some other sort of bar, that makes their key TAM action invalid, and then they're no longer entitled to any claim in that action or in an alternate remedy. Sovereign immunity, though, is more... That's the threshold inquiry, isn't it? Right, Your Honor. And so if the court doesn't have any further questions on the sovereign... I do have a question. Let me ask you a hypothetical question. Let's suppose that the key TAM relator, the government doesn't intervene, the key TAM relator is prosecuting the case and then just runs out of money and stops prosecuting the case. But subsequently, the government pursues an alternate remedy and receives some money. Could the relator then go back into court and ask for the key TAM action to be reopened to seek a relator's share? In that case, no, Your Honor. And the reason is that Congress designed the FCA not just to provide a bounty for whistleblowing. It could have created an alternate structure where just by whistleblowing, the relator receives some sort of reward and then receives an additional reward for litigating that claim on behalf of the government. But that's not what Congress did. The FCA provides a reward for relators who report fraud but then also successfully litigate on behalf of the United States government. And so the alternate remedy provision at 3730C5 gives the relator the same rights in an alternate remedy as he would have had if his key TAM action continued. You say successfully litigate. That's not exactly right because if the government pursues the alternate remedy, that's because it's not over with respect to the relator's action, right? I mean, it's not been successful. It hasn't achieved a judgment in favor of the government, right? That's right, Your Honor. What makes it successful? So successful or at least potentially successful. But at the point where a relator suit is dismissed, we know— What you're saying is that it at least has the potential for success and remains pending, right? Before the government— Well, when the government achieves whatever ultimate success it achieves. That's right. So a more accurate description would be successful or at least potentially successful. But the relator—setting aside the alternate remedy provision for a moment, in the original suit, if the government settles that claim, then, yes, he's entitled to it even though he hasn't successfully litigated. But if it's dismissed, then he has no right there. And so he can't—the alternate remedy provision doesn't give him greater rights to a recovery than he otherwise would have. You were talking earlier about there might be a situation where the key TAM could be reopened to seek a relator's share. And I'm curious what situation that would be then. So conceivably, if the—I don't know that that necessarily should happen, but you can imagine a circumstance where the relator successfully litigates a case, receives some sort of share out of the key TAM action, and then later discovers that while that case was ongoing, the government received something extra on the side and hid it from him. There's a case to be made that in that circumstance, even though his case was dismissed, he should be able to reopen it and receive a portion back. It'd be some kind of 60B fraud on the court, potentially some rationale like that. Potentially. But the way you deal with it is in that action. So if there's some kind of after-the-fact mechanism for relooking at it, you do it in the context of that action, not by filing a new complaint. Right, Your Honor. There are multiple references to the court. The court can award a share of the recovery. The court can dismiss a suit with the government's consent, so on and so forth. But everything's talking about what's happening in the context of that original key TAM action. There's simply nothing that allows a separate and distinct collateral lawsuit about the key TAM lawsuit. It seems to me that the FCA, the False Claims Act, doesn't really waive sovereign immunity at all. It is simply a statutory sharing of proceeds from a lawsuit coming from a defendant, not coming from the sovereign, not coming from the United States. So in the original key TAM action, I think probably there's not any waiver of sovereign immunity. The government simply never gets that money. Somewhere between 15 and 25 percent go to the relator in the discretion of the judge. Is that right or is it not right? I know we wouldn't have to decide that, but I was just curious. So to the extent that taking—to the extent that within the context of the key TAM action, allotting a share of the recovery from the defendant that otherwise would have gone to the United States, to the extent that implicates sovereign immunity, there's clearly a waiver there. It's simply just because it's clear. You certainly express. Yeah, it's very clear that the relator is entitled to a share of recovery. Your point is it may not be explicit, but it's at least clear implication enough to satisfy the Supreme Court precedent. Supreme Court says it's got to be expressed, not implied, but I guess there are situations where clear implication is kind of the middle position. I would—I think about it a little bit differently, Your Honor. Okay. It's clear that provided that all the other conditions are met, that a relator in certain circumstances is entitled to a share of the proceeds. Right. That's very clear in the statute. But is Judge Anderson right? I mean, we're dancing around this. That share comes from the defendant, not from the government. It looks like from the statute. Is that right or not? So the statute said it does come from the proceeds. The only reason I immediately say yes is that you can imagine circumstances where the government recovers in an alternate administrative proceeding, the money is already in the government's possession, say, and that would include— Correct. Whether or not it was still in the hands of the defendant or the government. Okay. The statute makes clear that that's the case. The only question is how do you go about seeking that recovery? And so if you look at 3730D, it says the court will award a share that it decides is reasonable. It's clear from the context that we're talking about the court in the key TAM action, not some other court. Are you familiar with the Guardiola case in the Ninth Circuit? Yes, Your Honor. In the briefs in that case, the government argued that the FCA provides a limited waiver of sovereign immunity, basically, so that the court would have jurisdiction over a case where the relator was seeking a share of an alternate remedy. That's not inconsistent with your position here today. No, it's not. Yeah. And, in fact, the position we took in the Guardiola case is that there's a limited waiver of sovereign immunity in appropriate circumstances within the context of a key TAM action to seek a share, but there's not this open-ended waiver of sovereign immunity that allows entirely separate lawsuits against the government. If there are no further questions, I'd urge the court to dismiss this or affirm the dismissal based on the lack of waiver of sovereign immunity. Thank you, Mr. McConnell. Thank you, Your Honors. Mr. King, you have five minutes. Thank you, Your Honors. To kind of just put in scope of, you know, what the significance of my actions and why I would take such actions is that every bit of scientific evidence that's been presented confirms and the government confirmed through their investigation that over 50 million critically defective 40-millimeter grenades were sold to the Army at a cost of $1.2 billion. Also, that in the documentation and email correspondence in the case I filed, it shows that the executives of command and DSC knew of this defect five years before they were actually addressed. And my question is, I guess naïve being an attorney, is that in 1986 when the Congress implemented and revised the FCA to include the alternate remedy clause, to say that that would promote, because of limited resources of the government, that would promote individuals moving forward and taking action to recover money for the government that they would not have gotten without the relator coming forward, in many cases, lives being destroyed. So if they enact that law, and there's no recourse because the government won't comply with that law. They don't. I mean, again, the facts show in the five years my case was alive, they only paid out 1% of the time. So, you know, I'm not an attorney, but I can read. So, you know, I don't understand why. Here's the thing, Mr. King. You have filed a new lawsuit against the federal government. And ordinarily, no citizen can sue the federal government because of sovereign immunity. Something that has existed since the founding of the Republic and predates the Republic. The Supreme Court, though, acknowledges, has ruled that if Congress wait, by statute, waives the sovereign immunity of the United States in certain circumstances, then a citizen can sue in those circumstances. And the problem we have is it does not appear from the language of the False Claims Act that Congress has waived the government's immunity, sovereign immunity, in the circumstance that we have here, where you have filed a new complaint against the government. And if they haven't, if Congress hasn't, then we would have no choice but to affirm the decision of the district court. I understand. I guess, especially in today's news on a daily basis, corruption and fraud, you know, within all aspects of the world and within our government. I mean, I had six attorneys, you know, good attorneys. Some were good, some were just attorneys. And not one of them took the appropriate action to protect my rights in due process, you know, under the law. And so my question is, if the Department of Justice and the government, the Department of Justice, becomes judge and jury and takes, because of their influence over the attorneys and individuals in your life and, you know, I mean, the destruction that occurred and reaching out to people within my inner circle that did unimaginable things to me. I lost everything. You know, if there is no defense against the government, then, you know, why does the law exist? You know, I don't understand why the Ultimate Remedy Clause exists if there's no defense against it, when the government just takes your information and your life is destroyed. I went from 25-year career, never collected unemployment, to being homeless in a shelter when I wrote the original complaint because of the personal attacks against me. You know, I mean, we're talking about criminal acts. And when we're standing here saying, well, the government's immune from any action, you know, they can, felonies, you know, and I just, I had no knowledge of the False Claims Act. I was prompted by the government to move forward. I mean, it's just, you know, is there any right and wrong, you know, in the law? Well, Mr. King, we're a court of law. And in a country where we're bound by the rule of law, the judges can only rule based on the law as we have it. We're not a roving commission that can correct any injustice that we see without regard to the law. We can only do what the law empowers us to do. Do you understand? Yes, sir. Okay. We appreciate you appearing before us this morning. We have your briefs. We have the case, and we'll take it under submission now. Okay. Thank you for my opportunity to present my facts in the court of law. You're welcome. If this is closure for me, then I can move on. Have a good day.